# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW DAVIS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS, et al.,<br><br>　　　　Defendants. | Civ. No. 17-6898 (RBK) (KMW)<br><br><br>**OPINION** |

**ROBERT B. KUGLER, U.S.D.J.**

## I.　INTRODUCTION

Plaintiff, Andrew Davis, is a state prisoner currently incarcerated at East Jersey State Prison in Rahway, New Jersey. He is proceeding *pro se* with a civil rights complaint filed pursuant to 42 U.S.C. § 1983. Plaintiff submitted for filing his complaint, together with a motion for the appointment of pro bono counsel. For the reasons set forth below, the complaint will be permitted to proceed in part. In addition, the motion for pro bono counsel will be denied without prejudice.

## II.　FACTUAL BACKGROUND

The allegations of this complaint will be construed as true for purposes of this screening opinion. Plaintiff seeks to bring a civil rights complaint pursuant to 42 U.S.C. § 1983 against the following Defendants: (1) New Jersey Department of Corrections ("NJDOC"); (2) NJDOC Commissioner Gary Lanigan; (3) Corrections Officer Victor Tapia; (4) Sergeant J. Kuhlen; (5) Sergeant S. Hunter; (6) Sergeant R. Dunns; (7) Nurse Kyrsten Pierce; (8) Lieutenant J. Sprenger; (9) Corrections Officer M. Mackeprang; (10) Corrections Officer M. Garcia; (11) Corrections Officer A. Dooley; (12) Corrections Officer J. Hawk; (13) Corrections Officer S. Lopez; (14) Corrections Officer J. Elbeuf; (15) Corrections Officer V. Spinelli; (16) Corrections Officer D.

1

West; (17) Corrections Officer L. Toro; (18) Corrections Officer Dennis Mercado; (19) Special Investigation Division ("SID") Investigator Donna Alexander; (20) SID Investigator Elizabeth Adams; (21) SID Investigator Eleazar Spratley; (22) Courtline Hearing Officer Norma Morales-Pitre; (23) Assistant Superintendent Lisa Swift; and (24) Administrator R. Riggins. (See ECF No. 1 at pp. 3-12).

Plaintiff's allegations arise from conduct that occurred while he was incarcerated at South Woods State Prison ("SWSP"). Plaintiff alleges that on July 26, 2016 at approximately 6:43 p.m., he approached the officer podium to speak with Officer Tapia about his mail when Officer Tapia verbally harassed him and pointed a can of OC chemical spray in Plaintiff's face. (*See id.* at p. 14). Plaintiff claims he raised his hands in the air, backed away from Officer Tapia, and returned to his cell. (*See id.*). Later that night at approximately 7:55 p.m., Officer Tapia came to Plaintiff's cell and ordered Plaintiff out of the cell. (*See id.* at p. 15). Plaintiff stood up from his bunk and exited the cell, at which time Officer Tapia punched and pushed Plaintiff from behind. (*See id.*).

Plaintiff alleges that Officer Tapia began swinging punches and Plaintiff was left with no other choice but to defend himself against the attack. (*See id.*). When additional staff responded, Plaintiff backed away from Officer Tapia with his hands in the air. (*See id.*). Plaintiff claims he surrendered and got onto the ground. (*See id.*). While on the ground, Plaintiff was placed in handcuffs and was assaulted by Officer Tapia and the responding corrections officers. (*See id.*). Plaintiff claims that Officer Tapia sprayed him in the face with OC chemical spray while the other officers repeatedly struck, punched, and kicked him. (*See id.* at pp. 15-16).

Following the assault, Plaintiff claims that the SWSP medical department denied him medical care and treatment for his injuries. (*See id.* at p. 16). Specifically, Plaintiff alleges that Nurse Pierce refused to conduct a medical examination or render any medical treatment to him.

2

(*See id.*).  Additionally, Plaintiff claims that Nurse Pierce falsified medical documents to state that he did not sustain any injuries as a result of the assault.  (*See id.*).

Plaintiff further alleges that he was interviewed by the Special Investigation Division ("SID") regarding the incident, but that the SID investigators refused to accept and file his criminal complaint against Officer Tapia.  (*See id.* at pp. 16-17).  Following the investigation, Plaintiff was charged with assaulting Officer Tapia.  (*See id.* at p. 17).  Additionally, Plaintiff claims that videotape evidence of the assault has been altered to cover up the assault.  (*See id.*).

Plaintiff seeks compensatory, consequential, and punitive damages from each Defendant.  (*See id.* at p. 28).  Additionally, Plaintiff has filed a motion seeking the appointment of pro bono counsel.  (*See* ECF No. 3).

### III.  <u>STANDARD OF REVIEW</u>

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e.  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a complaint, the court must be mindful to construe it liberally in favor of the plaintiff.  *See United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).  The court should "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  Thus, "[a] pro se complaint may

3

be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

IV. **DISCUSSION**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**A. Claims against Defendants in their Official Capacities and the NJDOC**

As an initial matter, Plaintiff brings claims against the Defendants in their "official capacities" as employees of the NJDOC. Additionally, Plaintiff brings claims against the NJDOC. States and state agencies are not "persons" subject to suit under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012) (holding that a state department of corrections is not a "person" under the statute and cannot be sued under § 1983). Additionally, for purposes of § 1983, "a lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them." *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) (citing *McMillian v. Monroe Cnty.*,

4

520 U.S. 781, 785 n.2 (1997)). Accordingly, Plaintiff's claims against the Defendants in their official capacities and against the NJDOC are dismissed with prejudice.

### B. Claims against Commissioner Lanigan and Administrator Riggins

Plaintiff alleges that Commissioner Lanigan and Administrator Riggins are liable under a *respondeat superior* theory of liability as they are responsible for the oversight of SWSP and the safety of prisoners. (*See* ECF No. 1 at pp. 3-4, 12). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id.*

Plaintiff has not alleged any facts indicating that Commissioner Lanigan and Administrator Riggins were personally involved in any alleged violations of Plaintiff's constitutional rights. Additionally, Plaintiff has not alleged any facts demonstrating that Commissioner Lanigan and Administrator Riggins had knowledge of the alleged violations of Plaintiff's constitutional rights. Accordingly, Plaintiff has failed to state viable § 1983 claims against Commissioner Lanigan and Administrator Riggins and all claims against these Defendants will be dismissed without prejudice.

### C. Eighth Amendment Claims

Plaintiff asserts numerous claims under both the Eighth Amendment and Article 1, paragraph 12 of the New Jersey Constitution. Article 1, paragraph 12 provides, in relevant part: "Excessive bail shall not be required, excessive fines shall not be imposed, and cruel and unusual punishment shall not be inflicted." N.J. Const. Art. I, Para. 12. This provision of the New Jersey Constitution is generally interpreted as analogous to the Eighth Amendment. *See Jumpp v. Power*, No. 08-4268, 2009 WL 1704307, *4 (D.N.J. June 18, 2009); *State v. Ramseur*, 524 A.2d 188, 210

(N.J. 1987). Therefore, the Court will consider Plaintiff's state and federal constitutional claims together.

### 1. Excessive Force Claim against Officers Tapia, Kuhlen, Hunter, Dunns, Sprenger, Mackeprang, Garcia, Dooley, Hawk, Lopex, Elbeuf, Spinelli, Toro, and West

Plaintiff alleges that Officers Tapia, Kuhlen, Hunter, Dunns, Sprenger, Mackeprang, Garcia, Dooley, Hawk, Lopez, Elbeuf, Spinelli, Toro, and West used excessive force against him in violation of the Eighth Amendment and New Jersey Constitution. Specifically, Plaintiff claims that Defendant Tapia attacked him by punching and pushing him from behind. (*See* ECF No. 1 at p. 15). After Plaintiff surrendered and was placed in handcuffs, Officer Tapia sprayed him in the face with OC chemical spray. (*See id.*). Plaintiff further alleges that the other officers continued to strike and kick him while he was handcuffed on the ground. (*See id.*).

"The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments: they cannot be 'cruel and unusual.'" *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981). It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). In its prohibition of cruel and unusual punishments, "[t]he Eighth Amendment also imposes duties on prison officials, 'who must provide humane conditions of confinement' . . . and must take reasonable measures to guarantee the safety of inmates." *Durham v. Dep't of Corr.*, 173 F. App'x 154, 156 (3d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

In other words, the Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment. *See Rhodes*, 452 U.S. at 346-47. "No static 'test' can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment

'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Id.* at 346 (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).

Construing all inferences in Plaintiff's favor, as the Court must do at this preliminary screening stage, this Court finds that Plaintiff has pled facts sufficient to state a plausible claim for relief necessary to withstand summary dismissal at this time. In particular, the facts as alleged by Plaintiff in his complaint are sufficient to question the use of force exercised by Officer Tapia and the other officers as well as the manner and purpose for which the force was applied. For instance, Plaintiff alleges that the officers continued to kick him, use OC chemical spray, and use force against him even after he was handcuffed on the ground. Therefore, the Court will allow Plaintiff's excessive force claim to proceed at this time against Officers Tapia, Kuhlen, Hunter, Dunns, Sprenger, Mackeprang, Garcia, Dooley, Hawk, Lopez, Elbeuf, Spinelli, Toro, and West in their individual capacities.

### 2. Denial of Medical Care Claim against Nurse Pierce

Plaintiff also asserts a denial of medical care claim in violation of the Eighth Amendment and New Jersey Constitution against Nurse Pierce. Specifically, Plaintiff alleges that Nurse Pierce refused to conduct a medical examination and treat Plaintiff following the assault. (*See* ECF No. 1 at p. 23). Additionally, Plaintiff claims that Nurse Pierce filed a false medical report stating that Plaintiff sustained no injuries as a result of the assault. (*See id.*).

To prevail on a denial of medical care claim under the Eighth Amendment, the inmate must show that the defendants were deliberately indifferent to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 285, 291 (1995); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Falsification of medical records coupled with "a showing of deliberate refusal to provide medical attention, as opposed to a particular course of treatment" may give rise to an Eighth Amendment violation. *Green v. Branson*, 108 F.3d 1296, 1304 (10th Cir. 1997); *see also Curbeam v.*

*Montgomery Cnty. Corr. Facility*, No. 12-2309, 2013 WL 315719, at *5 (E.D. Pa. Jan. 28, 2013) (plaintiff stated a claim based on allegations that defendant "personally disliked him and falsified his chart to the effect that he no longer wanted medical care, thereby causing him to receive no medical care for a period of 21 days"); *Wilkins v. Illinois Dep't of Corr.*, No. 08-732, 2009 WL 1904414, at *8 (S.D. Ill. July 1, 2009) ("It is at least arguable that falsifying Wilkins's medical records implicates his Eighth Amendment rights because the deliberate inaccuracies may prevent him from receiving adequate medical care"). To the contrary, however, "[t]here is no basis for a constitutional claim alleging the mere filing of a false report." *Moore v. Casselberry*, 584 F. Supp. 2d 580, 582 (W.D.N.Y. 2008); *see also Harris v. Pennsylvania Dep't of Corr.*, No. 13-2888, 2014 WL 941351, at *5 (E.D. Pa. Mar. 11, 2014) ("This allegation of falsifying medical reports, without more, does not support the inference that Robinson was deliberately indifferent to Plaintiff's serious medical need."); *Rivera v. Tennis*, No. 09-0888, 2010 WL 2838603, at *7 (M.D. Pa. May 20, 2010) (dismissing claims based on allegations that "defendant Foose filed false medical reports, and/or that [plaintiff] disagreed with her course of treatment"), *report and recommendation adopted*, 2010 WL 2838605 (M.D. Pa. July 19, 2010).

Here, Plaintiff alleges that Nurse Pierce denied him medical treatment following the assault and falsified his medical reports, preventing Plaintiff from receiving future medical care. Construing all reasonable inferences in Plaintiff's favor, Plaintiff has sufficiently stated a denial of medical treatment claim. Therefore, this Court will permit Plaintiff's claim against Nurse Pierce in her individual capacity to proceed past the *sua sponte* dismissal stage.

### 3. Failure to Protect Claim against all Defendants

Plaintiff also appears to assert a failure to protect claim in violation of the Eighth Amendment and New Jersey Constitution, with respect to the excessive force that was used against him by Officer Tapia and the other officers. (*See* ECF No. 1 at pp. 21-22). Prison officials have

a duty under the Eighth Amendment to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To state a failure-to-protect claim, an inmate must show that he is objectively "incarcerated under conditions posing a substantial risk of serious harm" and the defendant knows of and disregards that risk. *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Plaintiff's claim fails to satisfy either the objective element or the subjective element of the Eighth Amendment. Plaintiff has not shown that he was incarcerated under conditions posing a substantial risk of serious harm at the hands of corrections officers. Although an inmate need not wait until an actual assault takes place, there must be a "pervasive risk of harm." *Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985). "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." *Id.* Plaintiff does not mention any prior incidents concerning the use of excessive force by Officer Tapia or the other corrections officers. Because Plaintiff's allegations do not show that he faced an excessive risk of assault from the named corrections officers, they fall "short of alleging that the risk to which he was purportedly subjected was substantial." *Day v. Fed. Bur. of Prisons*, 233 F. App'x 132, 134 (3d Cir. 2007).

Plaintiff's allegations also fail to satisfy the subjective component. Plaintiff does not assert that any of the Defendants knew that he faced an excessive risk of assault by Officer Tapia and the other corrections officers, or "that a substantial risk of ... attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Farmer*, 511 U.S. at 842. Plaintiff's allegations, therefore, do not

show that the Defendants knew of and disregarded an excessive risk to his safety. Accordingly, Plaintiff's failure to protect claim against all Defendants will be dismissed without prejudice.

### D. Due Process Claims against Officer Mercado and Hearing Officer Morales-Pitre

The Court construes Plaintiff's complaint as asserting claims under § 1983 for denial of procedural due process and falsification of evidence in connection with his disciplinary hearing. Specifically, Plaintiff alleges that Officer Mercado falsified a disciplinary report and altered a videotape of the assault. (*See* ECF No. 1 at p. 10). Additionally, in connection with the disciplinary hearing, Plaintiff claims that Hearing Officer Morales-Pitre: (1) denied Plaintiff the right to be present during the hearing; (2) denied Plaintiff the right to review all evidence against him; (3) denied Plaintiff the defense of self-defense; (4) denied the admissibility of exculpatory evidence, including the videotape of the incident; (5) wrote a false summary of the evidence; (6) refused to take into account witness statements; and (7) denied Plaintiff the right to confront and cross-examine his accuser. (*See id.* at p. 24). As a result of the disciplinary hearing, Plaintiff states he received a sanction of 180 days loss of commutation time. (*See id.*).

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that before a § 1983 plaintiff may "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," he must first "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Id.* at 486-87. The Supreme Court applied *Heck* to prison disciplinary proceedings in *Edwards v. Balisok*, 520 U.S. 641 (1997) (holding claims for declaratory relief and money damages that necessarily implied the invalidity of the punishment imposed by prison disciplinary proceedings are not cognizable under § 1983).

Nevertheless, even where there has been no prior invalidation of the resulting judgment, a prisoner may bring a § 1983 claim for monetary damages based on the denial of due process during a prison disciplinary hearing, under certain circumstances. *See Wolff v. McDonnell*, 418 U.S. 539, 554 (1974) (stating that plaintiff's § 1983 "damages claim was ... properly before the District Court and required determination of the validity of the procedures employed for imposing sanctions, including loss of good time, for flagrant or serious misconduct"). More specifically, where a prison disciplinary hearing has not been previously invalidated, a claim challenging a prison disciplinary hearing is cognizable under § 1983 when the claim, if successful, would not necessarily demonstrate the invalidity of the punishment imposed. *See Balisok*, 520 U.S. 641; *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) (explaining distinction between challenges cognizable under § 1983 and those that are barred); *Harris v. Ricci*, 595 F. App'x 128, 133 (3d Cir. 2014) (due process challenge to prison disciplinary hearing was cognizable under § 1983 because it did not imply the invalidity of the resulting sanctions).

Here, Plaintiff alleges that his due process rights were violated when Hearing Officer Morales-Pitre denied Plaintiff the right to be present during the disciplinary hearing, call witnesses, and review and present evidence in his defense. Additionally, Plaintiff claims that Officer Mercado authored a false disciplinary report regarding the assault. These allegations, if true, would necessarily imply the invalidity of the disciplinary proceeding. Absent a showing that the disciplinary charge has already been invalidated, Plaintiff's procedural due process claims must be dismissed.

### E. Claims against Assistant Superintendent Swift

Plaintiff next claims that Assistant Superintendent Swift violated his constitutional rights by failing to amend, modify, and correct the administrative appeal of his disciplinary hearing. (*See* ECF No. 1 at p. 24). However, "the First Amendment does not impose any affirmative obligation

on the government to listen, to respond or ... to recognize [a grievance]." *Smith v. Ark. State Highway Employees, Local 1315*, 441 U.S. 463, 465 (1979); *see also Minnesota State Bd. for Community Colleges v. Knight*, 465 U.S. 271, 285 (1984) ("[This] Court rejected due process as a source of an obligation to listen. Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications"); *San Filippo v. Bongiovanni*, 30 F .3d 424, 437 (3d Cir. 1994) ("the petition clause does not require the government to respond to every communication that the communicator may denominate a petition"). Accordingly, Assistant Superintendent Swift's failure to reverse the disposition of Plaintiff's disciplinary hearing is not actionable under § 1983. Therefore, all claims against Assistant Superintendent Swift will be dismissed without prejudice.

### F. Claims against SID Investigators Alexander, Adams, and Spratley

Plaintiff alleges that SID Investigators Alexander, Adams, and Spratley violated the New Jersey Attorney General Guidelines and Plaintiff's due process rights by refusing to accept and file a criminal complaint[1] on his behalf. (*See* ECF No. 1 at p. 25). "Generally, there is no federal constitutional right to criminally prosecute another person; that power resides exclusively in the Executive Branch of the United States Government." *Harris v Anderson*, 672 F. App'x 148, 150 (3d Cir. 2017) (citing *United States v. Nixon*, 418 U.S. 683, 693 (1974)). "Although New Jersey allows a private citizen to file a criminal complaint alleging a violation of state law, 'a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution.'" *Id.* (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).

---

[1] To the extent that Plaintiff's § 1983 complaint attempts to assert violations of New Jersey criminal statutes against the Defendants, such claims must be filed in state court. *See* N.J. Ct. R. 3:2-1 (explaining procedure for filing private criminal complaint in New Jersey).

Moreover, "there is no statutory or common law right, much less a constitutional right, to an ... investigation [of a private criminal complaint.]" *Fuchs v. Mercer Cnty.*, 260 F. App'x 472, 475 (3d Cir. 2008) (citations and quotations omitted); *see also Bey v. Pennsylvania Dep't of Corr.*, 98 F. Supp. 2d 650, 664 (E.D. Pa. 2000) (denying prisoner's § 1983 claim against a prison official on the basis that the official failed to file a criminal complaint on his behalf). Accordingly, Plaintiff has failed to state a claim for which relief may be granted against SID Investigators Alexander, Adams, and Spratley.

### G. Equal Protection Claims against all Defendants

Plaintiff further alleges in conclusory terms that the Defendants have deprived him of his right to equal protection under both the United States Constitution and the New Jersey Constitution. (*See* ECF No. 1 at pp. 19, 20, 23-24, 26).

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyer v. Doe*, 457 U.S. 202, 216 (1982)). An equal protection claim can be brought by a "class of one," a plaintiff alleging that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003); *see also Jean-Pierre v. Bureau of Prisons*, 497 F. App'x 164, 168 (3d Cir. 2012). To assert a class-of-one claim, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

13

A plaintiff who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination that had a discriminatory effect on him. *See McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *Whitus v. Georgia*, 385 U.S. 545, 550 (1967). Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended to discriminate. *See Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264-66 (1977); *Washington v. Davis*, 426 U.S. 229, 242, 244-45 (1976). Thus, discriminatory intent must be a motivating factor in the decision, even though it need not be the sole motivating factor. *See Vill. of Arlington Heights*, 429 U.S. at 265-66.

The standard for an equal protection claim under the U.S. Constitution is analogous to the standard for an equal protection claim under the New Jersey Constitution. Article I, paragraph 1, of the New Jersey Constitution provides: "All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness." Although the term "equal protection" does not specifically appear in the New Jersey Constitution, Article I, paragraph 1 has been interpreted to confer an analogous right to that available under the Fourteenth Amendment of the U.S. Constitution. *Secure Heritage, Inc. v. City of Cape May*, 825 A.2d 534, 545 (N.J. Super. Ct. App .Div. 2003) (citing *Doe v. Poritz*, 662 A.2d 367 (N.J 1995)).

Here, Plaintiff has failed to allege a plausible equal protection claim. Plaintiff does not identify any similarly situated persons, nor how others in his position have been treated differently. Additionally, Plaintiff has failed to allege any facts suggesting that the assault was the result of purposeful discrimination. *See Faruq v. McCollum*, 545 F. App'x 84, 87 (3d Cir. 2013) (affirming dismissal of equal protection claim where prisoner failed to allege that the defendants acted with discriminatory intent or purpose); *Handley v. Pennsylvania*, 715 F. Supp. 657, 673 (M.D. Pa. 1989)

(noting that the plaintiff could not recover on the basis of equal protection where the alleged discrimination was based on personal animosity and not as a victim of class prejudice). Accordingly, Plaintiff's equal protection claims fail and shall be dismissed without prejudice.

### H. Retaliation Claim against all Defendants

Plaintiff further asserts multiple retaliation claims against all Defendants. "Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012) (collecting cases); *see also White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990) ("Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983."). To state a claim for retaliation, a plaintiff must allege that: (1) he engaged in constitutionally protected conduct, (2) he then suffered some adverse action caused by prison officials; and (3) a causal link existed between the protected conduct and the adverse action. *Obiegbu v. Werlinger*, 581 F. App'x 119, 122 (3d Cir. 2014) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

Based on the allegations of Plaintiff's complaint, it is not clear precisely what conduct led to the alleged retaliation; nor is it clear what specific adverse action Plaintiff allegedly suffered or that a connection existed between the constitutionally protected conduct and the alleged adverse action. Plaintiff makes the conclusory assertion that he was retaliated against for "exercising his First Amendment Right to Judicial Redress, Intervention, and Protections." (*See* ECF No. 1 at p. 26). However, this allegation fails to adequately describe the type of constitutionally protected behavior Plaintiff engaged in, does not specify any adverse action taken, and fails to provide a link between the unspecified protected conduct and the unspecified adverse action. Moreover, the factual assertions of the complaint do not help to clarify Plaintiff's argument. Accordingly, Plaintiff's retaliation claims will be dismissed without prejudice for failure to state a claim upon which relief can be granted.

### I. Violations of New Jersey Statutes and Policies against all Defendants

Plaintiff claims that the Defendants have violated numerous state statutes and policies related to the operation of state prisons, including N.J.A.C. Title 10A, N.J.S.A. 30:1B-3, N.J.S.A. 30:1B-6, and the NJDOC Rules and Regulations for Law Enforcement Personnel. These state statutes and policies, however, do not give rise to independent, private causes of action. *See Drake v. Muniak*, No. 13-3868, 2016 WL 1162375, at *7 (D.N.J. March 24, 2016) ("[T]here is no private cause of action explicitly created by Title 10A of the New Jersey Administrative Code."); *Johnson v. Dep't of Corr.*, No. 14-0896, 2016 WL 1135501, at *8 n.41 (M.D. Pa. Mar. 3, 2016) ("[V]iolation of DOC policies … are not cognizable under 42 U.S.C. § 1983.") (citing *Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011) (per curiam) ("[E]ven if the [BOP's] regulation were violated, its violation is not actionable.")). Therefore, because no private cause of action exists within the statutes and policies at issue, Plaintiff's claims are dismissed with prejudice.

### J. Violation of the Universal Declaration of Human Rights against all Defendants

Plaintiff alleges that the Defendants violated his human rights under the Universal Declaration of Human Rights. However, "the Universal Declaration of Human Rights is a non-binding declaration that provides no private rights of action." *United States v. Chatman*, 351 F. App'x 740, 741 (3d Cir. 2009) (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004) (clarifying that the Universal Declaration of Human Rights is merely a resolution of the United Nations and "does not of its own force impose obligations as a matter of international law")). Thus, Plaintiff's claim under the Universal Declaration of Human Rights will also be dismissed with prejudice.

### K. Violations of the Grievance Process against all Defendants

Plaintiff also claims that all Defendants have violated the prison grievance process by disregarding filed grievances, combining grievances with other complaints, responding to

grievances with falsified responses, and never returning appealed grievances. (*See id.* at pp. 26-27). To the extent Plaintiff seeks to assert a constitutional claim based on the Defendants' failure to comply with prison regulations requiring an administrative appeal process, this claim fails.

"Prisoners do not have a constitutional right to prison grievance procedures. Thus, defendants' alleged obstruction of such procedures is not independently actionable." *Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001)); *see also Pressley v. Johnson*, 268 F. App'x 181, 184 (3d Cir. 2008) ("[The plaintiff] also complained about the investigation and processing of his inmate grievances. Because there is no due process right to a prison grievance procedure, [the plaintiff]'s allegations did not give rise to a Fourteenth Amendment violation"); *Stringer v. Bureau of Prisons*, 145 F. App'x 751, 753 (3d Cir. 2005). Accordingly, inmate grievance procedures which may set forth or specify an administrative appeal do not give rise to a liberty interest protected by the Due Process Clause. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam); *Mann v. Adams*, 855 F.2d 639 (9th Cir.) (per curiam), *cert. denied*, 488 U.S. 898 (1988). Thus, Defendants' failure to properly respond to and process Plaintiff's administrative grievances is not actionable under § 1983. As it does not appear that Plaintiff could state a claim regarding the failure to respond to grievances and/or to provide an administrative appeal under § 1983 by adding additional factual allegations or naming additional defendants in an amended complaint, this Court will not grant leave to amend this claim.

**L. Defamation Claim against all Defendants**

Finally, Plaintiff attempts to assert a defamation claim against all Defendants. (*See* ECF No. 1 at p. 27). Under New Jersey law, the elements of the cause of action for defamation are: "(1) that defendants made a false and defamatory statement concerning [plaintiff]; (2) that the statement was communicated to another person (and not privileged); and (3) that defendants acted

negligently or with actual malice." *G.D. v. Kenny*, 15 A.3d 300, 310 (N.J. 2011). "In the case of a complaint charging defamation, plaintiff must plead facts sufficient to identify the defamatory words, their utterer and the fact of their publication. A vague conclusory allegation is not enough." *Zoneraich v. Overlook Hosp.*, 514 A.2d 53, 63 (N.J. Super. Ct. App. Div.), *cert. denied*, 501 A.2d 945 (N.J. 1986); *see also F.D.I.C. v. Bathgate*, 27 F.3d 850, 875 (3d Cir. 1994) (citing *Zoneraich*).

Here, the complaint fails to sufficiently plead a claim of defamation because Plaintiff does not identify when and by whom the allegedly defamatory statements were published, to whom these statements were published, or facts suggesting any publication was negligent or malicious. In the absence of supporting facts for Plaintiff's allegations, the defamation claim shall be dismissed without prejudice.

### M. Appointment of Pro Bono Counsel

Plaintiff has also filed a motion requesting the appointment of pro bono counsel. (*See* ECF No. 3). Plaintiff argues that he should be appointed counsel because he possesses no legal knowledge or skills to litigate this case. (*See id.* at p. 3). Additionally, Plaintiff claims that because he has been transferred out of SWSP he will be unable to conduct a proper investigation. (*See id.*).

Indigent persons raising civil rights claims have no absolute right to counsel. *See Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). At a minimum, there must be some merit in fact or law to the claims the plaintiff is attempting to assert. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). Once that threshold of merit is crossed, a court determining whether to appoint counsel will considers the following: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf. *See id.* at 155-56, 157

n.5; *see also Cuevas v. United States*, 422 F. App'x 142, 144-45 (3d Cir. 2011) (reiterating the *Tabron* factors).

Although Plaintiff has established his indigence and has pled claims of at least arguable merit, this Court finds that the appointment of counsel is not warranted at this time. This Court reaches this conclusion because Plaintiff's complaint indicates that Plaintiff is able to put forth his claims in a clear fashion and because at this early stage in the proceedings, the Court is unable to determine how much discovery will be needed. While the Court acknowledges that Plaintiff may be unable to obtain private counsel and that this case may largely rest on credibility determinations, this Court finds that, on balance, these *Tabron* factors weigh against the appointment of counsel at this time. Plaintiff's request for the appointment of counsel is therefore be denied without prejudice. Plaintiff may reapply for pro bono counsel at a later date.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's claims against Defendants in their official capacities and the New Jersey Department of Corrections are dismissed with prejudice. Plaintiff's claims against Commissioner Gary Lanigan, Administrator R. Riggins, Officer Dennis Mercado, Hearing Officer Norma Morales-Pitre, Assistant Superintendent Lisa Swift, Investigator Donna Alexander, Investigator Elizabeth Adams, and Investigator Eleazar Spratley in their individual capacities will be dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1), for failure to state a claim. Additionally, Plaintiff's failure to protect, equal protection, retaliation, and defamation claims against all Defendants shall be dismissed without prejudice. Plaintiff's claims for violations of various New Jersey statutes and policies, the Universal Declaration of Human Rights, and the prison grievance process against all Defendants shall be dismissed with prejudice.

Moreover, Plaintiff's excessive force claims against Officer Victor Tapia, Sergeant J. Kuhlen, Sergeant S. Hunter, Sergeant R. Dunns, Lieutenant J. Sprenger, Officer M. Mackeprang, Officer M. Garcia, Officer A. Dooley, Officer J. Hawk, Officer S. Lopez, Officer J. Elbeuf, Officer V. Spinelli, Officer L. Toro, and Officer D. West shall proceed. Plaintiff's denial of medical care claim against Nurse Kyrsten Pierce shall proceed. Further, Plaintiff's motion for the appointment of *pro bono* counsel is denied without prejudice. An appropriate order follows.

DATED: August 22, 2018                          s/Robert B. Kugler
                                                                   ROBERT B. KUGLER
                                                                   United States District Judge